MARGARET E. LISLES et al., Appellants, v. JOHN B. HUFFMAN, Respondent.

St. Louis Court of Appeals, March 4, 1901.

1. **Partition**: ADVANCEMENTS CLAIMED: THE EVIDENCE DISPROVES THE PRESUMPTION OF. The deeds made by James Huffman to all his children, being without consideration, raises the presumption that he intended them as advancements, but this presumption may be overcome by the evidence: *Held,* that the making of the deeds to all his children at the same time, by which the girls received forty acres and the boys eighty acres, and the father's explanation that he gave the boys more because they had remained longer with him and rendered greater services, are facts sufficient to rebut the presumption of advancements, and thereby leave the property subject to partition according to their respective interests.

Appeal from Newton Circuit Court.—*Hon. Henry Clay Pepper,* Judge.

AFFIRMED.

*John T. Sturgis* and *Hugh Dabbs* for appellants.

Thornton on Gifts and Advancements, section 556, says: "The statute itself (English statute of distribution, now common law) would raise a presumption without the aid of what is known to be the common understanding that, when a father makes a deed of gift to a child, he intends the gift to be an advancement and such is the doctrine of the decisions." And again in section 602 the same author says: "And where the deed from a parent to a child recites only a nominal considera-

tion, or one totally inadequate as a fair price for the land, * * * then the presumption that the transaction was an advancement is not to be frittered away by mere refinements." Ray v. Loper, 65 Mo. 472; Nelson v. Nelson, 90 Mo. 460; 1 Am. and Eng. Ency. of Law (2 Ed.), 770.

*O. L. Cravens* for respondent.

"The presumption that a conveyance of land by a father or parent to his child is an advancement, does not prevail where the deed recites a consideration for the transfer." Thornton on Gifts and Advancements, sec. 557. "Where the transaction assumes the form of a conveyance for value, there is absolutely no presumption of advancement, even where the price is inadequate." Woerner's Am. Law of Adm. (1 Ed.), p. 1219.

BLAND, P. J.—The suit is for the partition of four hundred and twenty-three acres of land situated in Newton county, of which James Huffman died seized in May, 1899. He died intestate, leaving no widow. The plaintiffs (in interest), his four married daughters, the defendant John Huffman, and Joseph Huffman (not a party to the suit) are all of his heirs at law. John Huffman, before the partition proceedings were commenced, bought and received a conveyance from Joseph of his interest, right and title to the land, so that each of the daughters will be entitled to one-sixth and the defendant John to two-sixths of the land, when partition is made. Thus far there is no controversy between the parties to the suit. The matter in dispute arises out of an attempt on the part of the plaintiffs to bring into hotchpot the value of other lands, which James Huffman conveyed to his children in his lifetime. In respect to this matter it is alleged by the plaintiffs that he conveyed to defendant, John, eighty acres of the

value of $2,500, as an advancement; also, eighty acres of the value of $2,500; and that he conveyed to each of his daughters as advancement to them, forty acres of land, each forty being of the value of $800.   That when John made the purchase of Joseph's interest in the four hundred and twenty-three acres, he bought it charged with the advancement made to Joseph of the value of $2,500.   The answer denied that the several conveyances made by James Huffman to his children were made as advancements, but as gifts, and denied that the eighties conveyed to Joseph and John were each of the value of $2,500.

The court found the value of the several parcels of land conveyed by James Huffman to his several children, at the date of the conveyances, to be as follows:   That to John of the value of $1,000, and that to Joseph of the value of $1,000 and $500 as the value of each forty conveyed to the girls.   The court found that the intention of James Huffman was to give the lands to his children, and that he did not make the conveyances to any of them as an advancement and refused to bring their values into hotchpot and rendered judgment of partition, ordering that the four hundred and twenty-three acres be partitioned between the parties, as follows:    To the plaintiffs, each, one-sixth, and to the defendant two-sixths, and appointed commissioners to make partition in kind.   Plaintiffs appealed. The appeal was awarded to this court.   Plaintiff moved to transfer the cause to the Supreme Court on two grounds: first, because the title to real estate is in issue, and second, because the amount involved exceeds the jurisdictional limits of this court.   There is absolutely no dispute whatever as to the title to the lands sought to be partitioned, nor any whatever as to the title of any of the lands conveyed by James Huffman to his children.   The value of the lands conveyed by James Huffman to John and Joseph Huffman are alleged to be $5,000, an

Vol 88 app—10

amount exceeding our jurisdiction, and it is this value the petition alleges should be brought into hotchpot, and this is what the controversy is about. If we were concluded by the allegations in the petition of the amount in dispute, we would transfer the cause, but we are not so concluded. Our duty is to look to the whole record and ascertain from it what the amount in controversy is, and to be governed by the whole record and not by an allegation in the petition. State ex rel. v. Rombauer, 130 Mo. loc. cit. 290, and cases cited; May v. Mortgage Co., 138 Mo. 447.

All the evidence as to the value of these lands fixed it below $2,500 and the court from the evidence found it to be of the value of $2,000. From all the evidence on this point and from the finding of the trial court, the amount in controversy is within our jurisdiction, and we overrule the motion to transfer.

In respect to the conveyances made by James Huffman to his children, the evidence is that they were all made on the twelfth day of October, 1872, at one and the same time and were filed for record in the recorder's office by James Huffman four days thereafter. The deeds were all quitclaim deeds; the one made to Joseph was for eighty acres of land, and expressed the nominal consideration of $10. The one to John was for eighty acres and expressed the same nominal consideration. Each of the deeds to either of the girls conveyed forty acres of land and expressed a nominal consideration of $5. No consideration was in fact paid by any of the grantees. To the married daughters, their deeds were delivered in a short time after their execution; to the others later. One of the eighty-acre tracts conveyed to one of the sons was partly in cultivation and was held and cultivated by James Huffman for a good number of years after the deed was made.

Osbourn, a disinterested witness, stated that in a con-

versation he had with James Huffman, not a great while after the conveyances were made, he asked Huffman why he had given the girls forty acres and the boys eighty; that Huffman answered that he thought he had a right to do that; the boys had stayed at home and worked and he thought they were entitled to it. To Sheppard, another disinterested witness, at another time, he made substantially the same statement, and there is further evidence that the boys did stay on the farm and labored there for the family several years after they had attained their majority.

John and Joseph were, over the objection of plaintiffs, permitted to testify to statements made to the one by the father, of the reason he had given eighty acres of land to the other. The admissibility of this testimony is, under the peculiar circumstances of the transaction, questionable, but there is enough unimpeached, uncontradicted and disinterested evidence in the record, coming from the mouths of witnesses whose competency is not questioned, to support the finding of the court, if the evidence of John and Joseph is excluded, and we decline for that reason to pass upon its admissibility.

The deeds having been made without any consideration passing from any of the grantees to James Huffman, the presumption is, that he intended the conveyances as advancements to his several children. Ray v. Loper, 65 Mo. 470; Woerner's Am. Law of Administration (2 Ed.), 1218; Thornton on Gifts and Advancements, sec. 556. But it is only a presumption that may be overcome by evidence and circumstances. Aside from the declarations made by James Huffman of his intention in making the deeds, the circumstances under which he made them, in our judgment, weaken the presumption that advancements were intended. At the same time, deeds were made to all of his children, to each of the males eighty acres was conveyed and to the females, forty acres each was con-

veyed—but for this inequality it would be apparent that the purpose of the ancestor was to make a distribution of a portion of his estate to all of his children in his lifetime. The evidence of Osbourn and Sheppard clears up any doubt that might arise on account of the inequality as to James Huffman's intention, and makes plain that his purpose was to give each of his children the tract of land he conveyed to him or her, and that the inequality was the purpose of compensating the boys for services they had rendered him, over and above what had been rendered by the girls. In other words, the apparent inequality was for the purpose of working a real equality in consonance with what James Huffman deemed equitable and just.

The judgment is affirmed. All concur.